

LODGED

AUG 1 2 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
(SACRAMENTO)

SHARON A. MARTIN,       ]
    Plaintiff,       ]
               ]
v.       ]
FINANCIAL FREEDOM in its corporate capacity; ]
LUISANDRA MIRANDA-MAISONET in her ]
corporate and individual capacity, COUNTY OF ]
SACRAMENTO in its municipal corporate capacity] ]
KCRA CH, 3 in its corporate capacity; PORTER & ]
SCOTT, LLC in their corporate capacity;BOBBIE J,]
MONTOYA in her official and capacity; JULIE ]
VALVERDE in her official and individual capacity;]
SCOTT JONES in his official and individual ]
capacity; FRANCHISE TAX BOARD in its official ]
corporate capacity; JOHN WHISENHUNT in his ]
corporate and individual capacity; KEITH FLOYD ]
in his corporate and individual capacity; ANNE ]
MARIE SCHUBERT in her official and individual ]
capacity; MICHAEL BLAZINA in his official and ]
individual capacity; TRUSTEE CORPS. in its ]
corporate capacity; AMY LEMUS in her ]
corporate and individual capacity; LORETTA ]
LYNCH in her official capacity; VICTORIA ]
MINOR in her individual and official capacity; ]
KAMALA HARRIS in her official and individual ]
capacity; and does 1-100. ]
    Defendants.

CASE_____   2:15-mc-0090 MCE CKD (PS)

**DEMAND FOR JURY TRIAL**

## PLAINTIFF'S ORIGINAL CIVIL RICO COMPLAINT AND
## DEMAND FOR JURY TRIAL

TO THE UNITED STATES DISTRICT COURT JUDGE:

    1.    NOW COMES plaintiff SHARON A. MARTIN to file this her ORIGINAL CIVIL

RICO COMPLAINT AND DEMAND FOR TRIAL BY JURY pursuant to ***Tolan v. Cotton,***

134 S. Ct. 1861 (2014),

        [1]  **Federal Civil Procedure**
                **Presumptions**
            In ruling on a motion for summary judgment, the evidence of the nonmovant is to be
            believed, and all justifiable inferences are to be drawn in his favor. Fed. Rules Civ.
            Proc. Rule 56, 28 U.S.C.A.

# INTRODUCTION

2.     This action arose upon defendants participation in a conspiracy to commit a scheme, or

artifice, to defraud a citizen of their intangible right to honest services by filing false documents

in County Recorder's Office to **falsely represent that plaintiff was dead** and that they were

commencing "a forced sale" of plaintiff's real property to fraudulent deprive her of her

"homestead exemption" of $175,000 without her due process right secured by the California

Constitution, Art. XX, Section 1.5, *see* **Tarlesson v. Broadway Foreclosures Investments,**

**LLC,** (2010) 184 Cal.App.4th 931.

3.     CALIFORNIA CONSTITUTION, ARTICLE 20  MISCELLANEOUS SUBJECTS

SEC. 1.5.  The Legislature shall protect, by law, from forced sale a certain portion of the
homestead and other property of all heads of families.

4.     At all times defendants knew that Plaintiff purchased her real property in 1970, filed a

Declaration of Homestead in 1977, and it was her primary residence for the last 45 years, and

now a disabled 70 year old natural person entitled to $175,000 exemption by statutory state law.

5.     Plaintiff can prove defendants committed two acts of Criminal Profiteering Activity

within the ten year statute of limitations provided under California Penal Code § 186.3, to

establish a state tort claim under the Bane Act, California Civil Code § 52.1, which provides no

immunity defense.

CALIFORNIA CONSTITUTION, ARTICLE 3
SEC. 5.  Suits may be brought against the State in such manner and in such courts as shall
be directed by law.

6.     Plaintiff can prove that defendants committed two predicate acts in violation of 18.

U.S.C. § 1341.Fraud and swindles within the ten year statute of limitation provided for RICO

claims under 18 U.S.C. § 1961 to establish "standing" for civil RICO claims under18 U.S.C.

§ 1964(c).

7.   Plaintiff brings this action for deprivation of rights, privileges & immunities under the First, Fourth, Fifth, Sixth, Seventh, Thirteenth and the "equal protection clause" of the Fourteenth Amendments of the Constitution for the United States and Title 42 U.S.C. §§ 1983 and 1985(3).

## JURISDICTION

8.   The district court has original jurisdiction over "all civil rights and elective franchise claims" pursuant to 28 U.S.C. § 1343 and all federal claims from predicate, or overt acts, arising under 18 U.S.C. §§ 2, 241, 371, 666, 1028A, 1341, 1346, 1510, 1513,1951,1962(d), 2721, and 1964(c). The district court has original jurisdiction over all conspiracies arising under 42 U.S.C. §§ 1983 and 1985(3). The district court has jurisdiction over all state law torts under the Fourteenth Amendment's "equal protection clause" and the Bane Act, California Civil Code § 52.1, arising within the Eastern District of California.

## PLAINTIFF

9.   Plaintiff Sharon A. Martin is a natural person residing at 429 Silver Park Avenue, Rio Linda, CA. 95673.

## DEFENDANTS

10.   Defendant FINANCIAL FREEDOM is hereby sued in its corporate capacity, doing business from Financial Freedom, 2900 Esperanza Crossing, Austin, TX 78758

11.   Defendant LUISANDRA MIRANDA-MAISONET is hereby sued in her corporate and individual capacity, doing business from Financial Freedom, 2900 Esperanza Crossing, Austin, TX 78758

12.   Defendant COUNTY OF SACRAMENTO is hereby sued in it municipal corporate capacity, doing business from 700 H Street, Sacramento, CA. 95814

13.   Defendant KCRA CH. 3 is hereby sued in its corporate capacity, doing business from KCRA 3, 3 Television Circle, Sacramento, Ca. 95814-0794

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                    **page 3**

14.    Defendant PORTER & SCOTT, LLC is hereby sued in their corporate capacity doing

business from Porter & Scott, 350 University Ave #200,Sacramento, CA 95825

15.    Defendant BOBBIE J. MONTOYA is hereby sued in her official and individual capacity

doing business from 501 I Street, Sacramento, CA. 95814.

16.    Defendant JULIE VALVERDE is hereby sued in her official and individual capacity

doing business from 700 H Street, Room 1710, Sacramento, CA.95814.

17.    Defendant SCOTT JONES is hereby sued in his official and individual capacity doing

business 700 H Street, Room 6720A, Sacramento, CA. 95814.

18.    Defendant FRANCHISE TAX BOARD is hereby sued in its corporate capacity doing

business from P.O. Box 1328, Rancho Cordova, CA. 95741

19.    Defendant JOHN WHISENHUNT is hereby sued in his corporate and individual capacity

doing business from 700 H Street, Room 2650, Sacramento, CA. 95814.

20.    Defendant KEITH FLOYD is hereby sued in his corporate and individual capacity

doing business from 700 H Street, Room 2650, Sacramento, CA. 95814.

21.    Defendant ANNE MARIE SCHUBERT is hereby sued in her official and individual

capacity doing business from 901 G Street, Sacramento, CA. 95814.

22.    Defendant MICHAEL BLAZINA is hereby sued in his official and individual

capacity doing business from 901 G Street, Sacramento, CA. 95814.

23.    Defendant TRUSTEE CORPS. is hereby sued in it corporate capacity doing business

 from 17100 Gillette Avenue, Irving, CA 92614.

24.    Defendant AMY LEMUS is hereby sued in her corporate and individual capacity doing

business from Trustee Corps, 17100 Gillette Avenue, Irving, CA 92614.

25.    Defendant LORETTA LYNCH in her official capacity doing business from the Office of

the Attorney General, U.S. Department of Justice, 960 Pennsylvania Avenue, NW, Washington,

D.C. 290530-0001.

26.     Defendant VICTORIA MINOR in her official and individual capacity doing business

from 501 I Street, Sacramento, CA. 95814.

27.     Defendant KAMALA HARRIS in her official and individual capacity doing business

from 1300 I Street, suite 125, P. O. Box 944255, Sacramento, CA 94244-2550.

### BACKGROUND

28.     Plaintiff Sharon A. Martin purchased the real property in September of 1970, located at

429 Silver Park Avenue, Rio Linda, CA 95673.  The residence was custom built to accommodate

plaintiff and two handicapped sons.  The property has Recorded equitable servitudes, C C & R's

as required by state law.  C C & R's cannot be amended and cover the 11 homes in the

development.  All residential property has different C C & R's, covering from one to multiple

residences in each development.  In 1976 the Homestead Act was passed to amend the California

Constitution creating Article XX, Section 1.5, which restricts attaching liens without Court

approval and provides a cash payout to the owner if the property is subjected to a forced sale.  In

1978 Proposition 13 was passed restricting government's right to increase property tax. Plaintiff

Recorded a Declaration of Homestead in 1977.  Proposition 218 was passed requiring the

electorate vote on all new taxes against real property.  In 1987 plaintiff was declared disabled

and received SSI and SSA.  The disability has progressed to severe requiring assistance from a

caretaker for survival.

29.     In 2006 my neighbor Jackie Mellow, residing at 7060 Silver Glen Way, lost her mother

and I had promised her mother that I would take care of her by hiring her to be my caretaker to

supplement her income.  Jackie was being harassed by anonymous complaints from county code

enforcement.  They gave her "Citations" for violating county codes. On January 27th, 2006, I

paid the balance on Jackie's Veteran's Loan in the amount of $5,804.14 so she would have no

mortgage. Code Enforcement continued to threaten her, sending her bills for thousands of

dollars, and threatening to take her home if she did not cooperate. Jackie Recorded her

Declaration of Homestead.

30.     I knew that code enforcement was just an extortion racket because "Citations" were

repealed in 1967 with the United States Supreme Court Opinions in *Camara v. Municipal Court*,

387 U.S 523 (1967) and *See v. City of Seattle,* 387 U.S. 541 (1967).

**CHAPTER 5b**
**CITATIONS FOR VIOLATIONS OF**
**COUNTY, CITY OR CITY AND**
**COUNTY ORDINANCES**
**[REPEALED]**

**California Penal Code §§ 853.1-853.4**   Enacted 1955. Repealed 1967 ch. 816

31.     In 2008 the insane conduct of local government could be recognized as "predicate acts of

racketeering" and "collection of unlawful debt" or 18 U.S.C. § 1951(b)(2) "extortion" obtaining

property with the owner's consent by use of threat, force, fear or under color of official right.

**KCRA 3 News**

**Foreclosure Trend May Hurt Taxpayers' Wallet**

**Banks Dropping Sale Price As Much as 50%, Officials Say**

POSTED: 4:47 pm August 14, 2008
UPDATED: 6:23 pm PDT August 14, 2008

Sacramento, Calif. A new trend within bank-owned foreclosures may be causing an artificial price jump
that could cost taxpayers hundreds of thousands of dollars, some real `estate experts said.

`Beefed-up code enforcement of bank-owned homes is leading to more violations and liens being placed on
foreclosure properties, officials said.

` Some of these fines can be up to thousands of dollars.

The problem for taxpayers, **KCRA 3** has learned, is that multiple banks--instead of paying those fees to fix
the properties—are dropping sale prices as much as 50 percent to get `the property out of their hands.

"What they (code enforcement agencies) are doing is not forcing the bank to fix it up, Mike Lyon of Lyon
Real Estate, "They are forcing the bank to give it away."

`There are currently 933 bank-owned homes in the city and county of Sacramento facing liens and
violations.

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                    page 6

If the banks were to sell all of those homes for half the current market price, the city and county could lose more than $1.1 million in tax revenue.

`But some code enforcers said their number one duty is to ensure foreclosed homes are safe.

"I believe most buyers would want to know their property had code enforcement issues," said Carl Simpson, who is with the Sacramento County Code Enforcement.

`Some code enforcers also said banks could reverse the trend of dropping prices.

`"They could fix the house up, sell it for a full price and sell it for what's it worth," said Ron O'Conor, of City Code Enforcement.

`It is unlikely banks will reverse the trend and pay for expensive code violations because, according to market analysts, most banks simply want to get properties off the books, `some real estate experts said.

I'm disturbed and I'm concerned this will get bigger and bigger," Lyon said.

32.    Defendant KCRA CH.3 knew that "citations" and "private property searches by municipal employees" violate the Fourth Amendment .and that "media ride along" have been constitutionally prohibited since 1999.

33.    All Defendants knew that "private individuals" could not "impersonate" government officials and exercise police powers, knowing that they were common criminals, or vigilantes, committing trespass, extortion and robbery, see *George v Edholm , 752 F 3d 1206, 1215-1216 (9th Cir. 2014)*, quoting: A. State Action

The district court held as a matter of law that Dr. Edholm's conduct could not be attributed to the state. We disagree.

[4] ▇▇▇ does not dispute that Dr. Edholm is a private citizen whose conduct ordinarily would not be attributable to the state. *See Brunette v. Humane Soc'y of Ventura Cnty., 294 F.3d 1205, 1209 (9th Cir.2002)*. Private action may be attributed to the state, however, if "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)* (quoting *Jackson v. Metro. Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)*). Such a nexus may exist when, for instance, private action "results from the State's exercise of 'coercive power,' " or "when the State provides 'significant encouragement, either overt or covert,' " to the private actor. *Id. at 296, 121 S.Ct. 924* (quoting *Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)*).

[5] [6] [7] Police officers may not avoid the requirements of the Fourth Amendment by inducing, coercing, promoting, or encouraging private parties to perform searches they would not otherwise perform. *See United States v. Reed, 15 F.3d 928, 932–33 (9th Cir.1994); see also Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir.1999)* (allowing a finding of state action where a jury could find that actions were "unlikely to have been undertaken" without state encouragement (internal quotation marks omitted)). The Supreme Court has stated, "[I]t is ... axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison, 413 U.S. 455, 465, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973)* (internal quotation marks omitted). A private party's search may be attributed to the state when "the private party acted as an instrument or agent

of the Government" in conducting the search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Reed*, 15 F.3d at 931; *United States v. Walther*, 652 F.2d 788, 791 (9th Cir.1981). Police officers may be liable for a private party's search when the police "ordered or were complicit in the search[ ]." *United States v. Sparks*, 265 F.3d 825, 831 (9th Cir.2001), *overruled on other grounds by United States v. Grisel*, 488 F.3d 844 (9th Cir.2007) (en banc); *see also United States v. Ziegler*, 474 F.3d 1184, 1188, 1190 (9th Cir.2007) (finding state action where an FBI agent told a private employer to make a copy of its employee's computer files); *Dyas v. Superior Court*, 11 Cal.3d 628, 114 Cal.Rptr. 114, 522 P.2d 674, 677 n. 2 (1974).

34.    Defendant FINANCIAL FREEDOM did enter into a conspiracy to levy charges against plaintiff's property to force foreclosure by coercion, threat, under color of official right, which states a cognizable STATE CLAIM.

35.    The target goal of the scheme or artifice to defraud citizens of their intangible right to honest services. 18 U.S.C. § 1346. Knowing that I was not insane brought little peace since anyone who challenges a corrupt government was threatened, intimidated of killed. The targets are the elderly or disabled. The act of "criminal profiteering" are despicable. The fear generated by their acts of domestic terrorism preyed upon the weak and defenseless, but reaped millions of dollars.

36.    Defendants SCHUBERT and JONES did enter into a conspiracy to commit "grand theft automobile and did steal two vehicles and launder the stolen cars consisting 1982 Toyota Celica, License No.5RWC402, VIN No. JT2RA64L5C6014434 and 1992 Ford Escort, Plate No. 6BWC528, VIN No. 1FAPP10J4NW201015 knowing it violate state and federal law, see **Cuevas v. Superior Court** (2013) 221 Cal.App.4th 1312

37.    On April 23, 2007 I obtained a Federal Reverse Mortgage from Neighbors Financial and became a "target with money". It was the high point in the market.

38.    Luckily, defendants are very proud of their conduct and openly brag in sworn documents. In November 2007, code enforcement attacked again and I told them to "get a warrant, they procured a judicial act, in violation of 18 U.S.C. § 2 and proceeded to commit criminal trespass with two armed officers from the sheriff's department to "protect them".

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                    **page 8**

39.    On December 27, 2007 I filed suit in the district court entitled Martin v. Parks, Docket
No. 2:07-cv-2796.  I was naïve and believed in the integrity of the court.

40.    On January  4, 2008 I filed Mellow and Martin v. Sacramento County, Docket No, 2:08-
cv-0027. After several violations of Federal Rules of Civil Procedures, no hearing, Judge Karlton
combines the cases and issued a "directed verdict" denied Jury Trial, and we appealed.  The
Ninth Circuit does not hear pro se complaints and the case was memo-dismo-ed by the Clerks.
The dockets establish "judicial corruption".  Code enforcement decided I was irate so they left
me alone, but destroyed Jackie by procuring and judicial act, stole four truck loads of her
personal property after cutting the lock off her six foot chain link fence, without an inventory,
and will only charge her $300 a month, for the rest of her life, for all their good deeds.

41.    The officers of the court "bribing the judges" are defendants PORTER & SCOTT, LLC
and Assistant U.S. Attorney Bobbie J. Montoya.  There are enough documents to write a book,
and it is in the works. 18 U.S.C.§ 1510.

42.    On October 14, 2008, defendant County of Sacramento file a false lien to cloud the title
of plaintiff's property RECORDED BOOK 2008-1014 PAGE 1351 which constitutes a violation
of California Penal Code § 115(a).  The lien was recorded with intent to threaten and intimidate
plaintiff, was sent through mail, see   **People v. Denman,** (2013) 218 Cal.App.4th 800

> [2]    Forgery
> False entries or records, and alteration of entries or records
>
> Purpose of the statute creating the offense of knowingly procuring or offering
> any false or forged instrument to be filed is to protect the integrity and
> Reliability of public recods, and this purpose is served by an interpretation
> That prohibits any knowing falsification of public records, Cal. Penal Code
> § 115(a).

43.    Sacramento County is not a "prosecuting entity", legal action to enforce ordinances can
only be initiated by a prosecutor pursuant to the California Constitution, defendant County of
Sacramento knew that filing a false document, and sending them through the mail, was an overt

act of "criminal profiteering activity" and a violation of California Penal Code § 186.11(a)(1).

See **Steen v. Appellate Division of Superior Court** (2014) 59 Cal.4th 1045.

44.     In 2010 I filed Bankruptcy and still the false liens continued.

MAIL FRAUD

45.     On September 2, 2011, defendant Sacramento County recorded RELEASE OF NOTICE
OF PENDING ENFORCEMENT ACTION, BOOK 20110902 PAGE 0934, establishing the
October 14, 2008 was a false lien to threaten and intimidate plaintiff and "cloud the title of real
estate" and injure plaintiff.

46.     On September 30, 2012, defendant did use the mail to file a false demand for money in
the amount of $7,043.53 alleged to be a notice of delinquency without explanation why it
exceeded plaintiff $341.00 per year tax bill, constituting "mail fraud" in violation of 18 U.S.C.
§§ 1341 and 1962(d).

47.     On  March 9th, 2013, defendant SCOTT JONES, did use the mail to demand $503.00 and
threatening "a warrant being issued for your arrest" in violation of the Driver's Privacy
Protection Act of 1994, 18 U.S.C. § 2721, also committing "identity theft" in violation of 18
U.S.C. § 1028A, knowing that "no warrant has ever issued for plaintiff" upon application of the
district attorney and signed by a judge.  Defendant knew that driver's licenses are a "substantive
right under California law, and cannot be suspended without legal action, due process, in the
superior court.

48.     On July 10, 2013, defendant FRANCHISE TAX BOARD, did use the mail , to send
DEMAND FOR PAYMENT-COURT ORDERED DEBT COLLECTIONS, without attached
court documents, demanding $503.00 which constitutes "mail fraud" and collection of unlawful
debt in violation of 18 U.S.C. §§ 1341 and 1962(d).

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                                    **page 10**

49.   On August 26, 2014, defendant County of Sacramento recorded NOTICE OF POWER

TO SELL TAX-DEFAULTED PROPERTY, demanding $1,367.06, in the County Recorder

BOOK 20140826 PAGE 0958, without compliance with the Homestead Act of 1976.

50.   On December 24, 2014, defendant County of Sacramento, used the mail, to send

IMPORTANT NOTICE TO PARTIES AND NOTICE OF SALE OF TAX-DEFAULTED

PROPERTY for $15,700.00 under Revenue and Taxation Code, not California Code of Civil

Procedures §§ 704.0710-704-0850, as required by State law.

51.   On January 21, 2015, defendant County of Sacramento, used to mail, to send a FINAL

NOTICE demanding $13,926.42, threatening to sell plaintiff's property without due process.

52.   On January 23, 2015, defendant Financial Freedom, used the mail, to send FINAL

NOTICE demanding $17,237.55, stating YOUR REVERS MORTGAGE REMAINS

SUSPENDED IN DEFAULT STATUS, AS A RESULT.

53.   On January 23, 2015, defendants JOHN WHISENHUNT and defendant KEITH FLOYD

responded to a request for "public documents or liens" that they could not find any documents.

54.   On January 30, 2015, defendant KEITH FLOYD responded to Public Records Act

Request, quoting:

> The California Homestead Exemption Law protects a certain value of your
> property from being claimed through the forced sale of the property to satisfy a
> judgment lien. The exemption does not apply to real property taxes. It is well
> settled in California Law that counties may proceed against a homestead property
> for real property for real property taxes as though there were no exemption law in
> existence. (Morrison v. Barham (1960) 184 Cal. App. 23d 267, 272.

55.   The Homestead Act was enacted in 1976, a case cite from 55 years ago has little effect on

a law enacted 39 years ago to close the alleged loophole. **Tarlesson v. Broadway Foreclosures**

**Investments, LLC,** (2010) 184 Cal.App.4[th] 931. An Appellate opinion from 5 years ago is

binding on the counties. Constitutional rights created in 1976, in existence for 39 years, cannot

be repealed before creation. Women can vote now, also.

56.     On February 6, 2015, defendant ANNE MARIE SCHUBERT defendant MICHAEL

BLAZINA responded to Public Records request, knowing only 59 elected officials can initiate

prosecutions in California, see California Penal Code § 186.3(c) (one attorney general and 58

district attorneys) with an admission that she is unlawfully delegating her statutory power.

Quoting:

**Sacramento County**
**District Attorney's Office**
ANNE MARIE SCHUBERT
District Attorney

Stephen J. Grippi
Chief Deputy
Michael A. Neves
Assistant District Attorney

February 6, 2015

Sharon A. Martin
429 Silver Park Avenue
Rio Linda, CA 95673-2242                    Re: Public Records Act Request

Dear Ms. Martin:

This is in response to your letter dated January 22, 2015, received by this office on January 29, 2015. You have
requested that District Attorney Anne Marie Schubert provide "the list of NAMES and CAPACITIES of all State,
county, city, and private parties YOU authorize to arrest and procure judicial acts without your personal
authorization to initiate criminal arrests and 'searches and seizures' under the provision of the Fourth Amendment
and Cal. Const. Art. 5, § 13, West's Ann. Cal. Gov. Code § 12550, pursuant to Government Code section 100,
subdivision (b)."

Your request is vague. You have asked for a list of individuals who have been authorized by the District Attorney to
act without the District Attorney's authorization. This is nonsensical.

Interpreting your request to mean that you want a list of individuals who have been authorized by the District
Attorney to arrest and procure judicial acts to initiate criminal arrests, conduct searches, and seize evidence, our
office does not have such a document. The Public Records Act applies to existing records, and does not require a
public agency to create a record that does not exist. (Gov't Code § 6252(e) and (f).) **Moreover, statutory and
judicial authority allow peace officers to make arrests, conduct searches, and seize evidence. Prior
authorization from a district attorney is not required to engage in this type of activity.**

Thus, your request for records is denied.
Sincerely,
ANNE MARIE SCHUBERT
DISTRICT ATTORNED
Michael Blazina
Assistant Chief Deputy District Attorney
sacda.org
901 G Street, Sacramento, CA 95814 I              p: 916.874.6218              f: 916.321.2201

57.     All Defendants knew "that there must be a neural and detached magistrate between a

citizen and a police officer", see ***Wong Sun v. United States,*** 371 U. S. 471 (1963).

58.     On July 24, 2015, defendants TRUSTEE CORPS and AMY LEMUS did record an

instrument containing materially false statements of fact and law, in the County Recorder BOOK

20150624 PAGE 0766, quoting:

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** TRUSTEE CORPS is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of April 23, 2007, executed by SHARON A. MARTIN, AN UNMARRIED WOMAN, as Trustor(s), to secure obligations in favor of NEIGHBORS FINANCIAL CORPORATION, the original Beneficiary, recorded April 27, 2007, in Book 20070427, on Page 1325, of the official records in the Office of the Recorder of Sacramento County, California, and is subject to the terms and conditions contained therein and that the payment has not been made of:

**THE SUBJECT DEED OF TRUST IS A REVERSE MORTGAGE THAT BECAME ALL DUE AND PAYABLE ON February 3, 2015 FOR ONE OR MORE OF THE FOLLOWING BREACHES:**

**1) WITHIN 30 DAYS OF THE DATE OF DEATH OF THE LAST SURVIVING BORROWER, BENEFICIARY HAS BEEN PRESENTED WITH SUFFICIENT EVIDENCE AND DOES HEREBY REPRESENT THAT TO THE BEST OF THEIR BELIEF AND KNOWLEDGE THE LAST SURVIVING BORROWER UNDER THE NOTE AND DEED OF TRUST IS DECEASED.**

**2) ALL OF A BORROWER'S TITLE IN THE PROPERTY (OR HIS/HER BENEFICIAL INTEREST IN A TRUST OWNING ALL OR PART OF THE PROPERTY) IS SOLD OR TRANSFERRED AND NO OTHER BORROWER RETAINS TITLE,**

**3) THE PROPERTY CEASES TO BE THE PRINCIPAL RESIDENCE OF A BORROWER FOR REASONS OTHER THAN DEATH AND THE PROPERTY IS NOT THE PRINCIPAL RESIDENCE OF AT LEAST ONE OTHER BORROWER.**

**4) AN OBLIGATION OF THE BORROWER UNDER SAID NOTE AND DEED OF TRUST WAS NOT PERFORMED.**

59.     Defendants, knew, al all time relevant to this action, that plaintiff is not dead and cannot

lose rights granted by Law or the Constitution pursuant to **California Code of Civil Procedures**

**§§ 704.0710-704-0850**, as required by State law, which provides:

HOMESTEAD code civil procedures

CA Codes (ccp:704.710-704.850)CODE OF CIVIL PROCEDURE'SECTION 704.710-704.850

**§ 704.710**. As used in this article:
    **(a) "Dwelling" means a place where a person resides and may include but is not limited to the following:**
        (1) A house together with the outbuildings and the land upon which they are situated.
        (2) A mobilehome together with the outbuildings and the land upon which they are situated.
        (3) A boat or other waterborne vessel.
        (4) A condominium, as defined in Section 783 of the Civil Code.
        (5) A planned development, as defined in Section 11003 of the Business and Professions Code.

(6) A stock cooperative, as defined in Section 11003.2 of the Business and Professions Code.

(7) A community apartment project, as defined in Section 11004 of the Business and Professions Code.

**(b)** "Family unit" means any of the following:

(1) The judgment debtor and the judgment debtor's spouse if the spouses reside together in the homestead.

(2) The judgment debtor and at least one of the following persons who the judgment debtor cares for or maintains in the homestead:

(A) The minor child or minor grandchild of the judgment debtor or the judgment debtor's spouse or the minor child or grandchild of a deceased spouse or former spouse.

(B) The minor brother or sister of the judgment debtor or judgment debtor's spouse or the minor child of a deceased brother or sister of either spouse.

(C) The father, mother, grandfather, or grandmother of the judgment debtor or the judgment debtor's spouse or the father, mother, grandfather, or grandmother of a deceased spouse.

(D) An unmarried relative described in this paragraph who has attained the age of majority and is unable to take care of or support himself or herself.

(3) The judgment debtor's spouse and at least one of the persons listed in paragraph (2) who the judgment debtor's spouse cares for or maintains in the homestead.

**(c) "Homestead" means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead. Where exempt proceeds from the sale or damage or destruction of a homestead are used toward the acquisition of a dwelling within the six-month period provided by Section 704.720, "homestead" also means the dwelling so acquired if it is the principal dwelling in which the judgment debtor or the judgment debtor's spouse resided continuously from the date of acquisition until the date of the court determination that the dwelling is a homestead, whether or not an abstract or certified copy of a judgment was recorded to create a judgment lien before the dwelling was acquired.**

**(d)** "Spouse" does not include a married person following entry of a judgment decreeing legal separation of the parties, unless such married persons reside together in the same dwelling.

**§ 704.720. (a) A homestead is exempt from sale under this division to the extent provided in Section 704.800.**

**(b)** If a homestead is sold under this division or is damaged or destroyed or is acquired for public use, the proceeds of sale or of insurance or other indemnification for damage or destruction of the homestead or the proceeds received as compensation for a homestead acquired for public use are exempt in the amount of the homestead exemption provided in Section 704.730. The proceeds are exempt for a period of six months after the time the proceeds are actually received by the judgment debtor, except that, if a homestead exemption is applied to other property of the judgment debtor or the judgment debtor's spouse during that period, the proceeds thereafter are not exempt.

**(c)** If the judgment debtor and spouse of the judgment debtor reside in separate homesteads, only the homestead of one of the spouses is exempt and only the proceeds of the exempt homestead are exempt.

**(d)** If a judgment debtor is not currently residing in the homestead, but his or her separated or former spouse continues to
reside in or exercise control over possession of the homestead, that judgment debtor continues to be entitled to an exemption under this article until entry of judgment or other legally enforceable agreement dividing the community property between the judgment debtor and the separated or former spouse, or until a later time period as specified by court order. Nothing in this subdivision shall entitle the judgment debtor to more than one exempt homestead. Notwithstanding subdivision (d) of Section 704.710, for purposes of this article, "spouse" may include a separated or former spouse consistent with this subdivision.

**§ 704.730. (a) The amount of the homestead exemption is one of the following:**

(1) Seventy-five thousand dollars ($75,000) unless the judgment debtor or spouse of the judgment debtor who resides in the homestead is a person described in paragraph (2) or (3).

(2) One hundred thousand dollars ($100,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead a member of a family unit, and there is at least one member of the family unit who owns no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor.

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                    **page 14**

(3) One hundred seventy-five thousand dollars ($175,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:

(A) A person 65 years of age or older.

(B) A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment. There is a rebuttable presumption affecting the burden of proof that a person receiving disability insurance
benefit payments under Title II or supplemental security income payments under Title XVI of the federal **Social Security Act** satisfies the requirements of this paragraph as to his or her inability to engage in substantial gainful employment.

(C) A person 55 years of age or older with a gross annual income of not more than twenty-five thousand dollars ($25,000) or, if the judgment debtor is married, a gross annual income, including the gross annual income of the judgment debtor's spouse, of not more than thirty-five thousand dollars ($35,000) and the sale is an involuntary sale.

(b) Notwithstanding any other provision of this section, the combined homestead exemptions of spouses on the same judgment shall not exceed the amount specified in paragraph (2) or (3), whichever is applicable, of subdivision (a), regardless of whether the spouses are jointly obligated on the judgment and regardless of whether the homestead consists of community or separate property or both. Notwithstanding any other provision of this article, if both spouses are entitled to a homestead exemption, the exemption of proceeds of the homestead shall be apportioned between the spouses on the basis of their proportionate interests in the homestead.

§ 704.740 (a) Except as provided in subdivision (b), the interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article.

(b) If the dwelling is personal property or is real property in which the judgment debtor has a leasehold estate with an unexpired term of less than two years at the time of levy:

(1)  A court order for sale is not required and the procedures provided in this article relating to the court order for sale do not apply.

(2) An exemption claim shall be made and determined as provided in Article 2 (commencing with Section 703.510).

### RELEASE OF LIEN

§ 704.750.  (a) Promptly after a dwelling is levied upon (other than a dwelling described in subdivision (b) of Section 704.740), the levying officer shall serve notice on the judgment creditor that the levy has been made and that the <u>property will be released unless the judgment creditor complies with the requirements of this section</u>. Service shall be made personally or by mail. <u>Within 20 days after service of the notice, the judgment creditor shall apply to the court for an order for sale of the dwelling and shall file a copy of the application with the levying officer. If the judgment creditor does not file the copy of the application for an order for sale of the dwelling within the allowed time, the levying officer shall release the dwelling.</u>

(b) If the dwelling is located in a county other than the county where the judgment was entered:

(1) <u>The judgment creditor shall apply to the superior court of the county where the dwelling is located.</u>

(2) <u>The judgment creditor shall file with the application an abstract of judgment in the form prescribed by Section 674 or, in the case of a judgment described in Section 697.320, a certified copy of the judgment,</u>

(3)  <u>The judgment creditor shall pay the filing fee for a motion as provided in subdivision (a) of Section 70617 of the Government Code.</u>

### JUDGMENT CREDITOR SHALL BE UNDER OATH

§ 704.760. The <u>judgment creditor's application shall be made under oath</u>, shall describe the dwelling, and shall contain all of the following:

(a) A statement whether or not the records of the county tax assessor indicate that there is a current homeowner's exemption or disabled veteran's exemption for the dwelling and the person or persons who claimed any such exemption.

(b) A statement, which may be based on information and belief, whether the dwelling is a homestead and the amount of the homestead exemption, if any, and a statement whether or not the records of the county recorder indicate that a homestead declaration under Article 5 (commencing with Section 704.910) that describes the dwelling has been recorded by the judgment debtor or the spouse of the judgment debtor.

(c) A statement of the amount of any liens or encumbrances on the dwelling, the name of each person having a lien or encumbrance on the dwelling, and the address of such person used by the county recorder for the return of the instrument creating such person's lien or encumbrance after recording.

## THE JUDGMENT CREDITOR SHALL DO BOTH OF THE FOLLOWING

§ 704.770. (a) Upon the filing of the application by the judgment creditor, the court shall set a time and place for hearing and order the judgment debtor to show cause why an order for sale should not be made in accordance with the application. The time set for hearing be not later than 45 days after the application is filed or such later time as the court orders upon a showing of good cause.

(b) Not later than 30 days before the time set for hearing, the judgment creditor shall do both of the following:

(1)  Serve on the judgment debtor a copy of the order to show cause, a copy of the Application of the judgment creditor, and a copy of the notice of the hearing in the form prescribed by the Judicial Council. Service shall be made personally or by mail.

(2)  Personally serve a copy of each document listed in paragraph (1) on an occupant of the dwelling or, if there is no occupant present at the time service is attempted, post a copy of each document in a conspicuous place at the dwelling.

§704.780. (a) The burden of proof at the hearing is determined in the following manner:

(1) If the records of the county tax assessor indicate that there is a current homeowner's exemption or disabled veteran's exemption for the dwelling claimed by the judgment debtor or the judgment debtor's spouse, the judgment creditor has the burden of proof that the dwelling is not a homestead. If the records of the county tax assessor indicate that there is not a current homeowner's exemption or disabled veteran's exemption for the dwelling claimed by the judgment debtor or the judgment debtor's spouse, the burden of proof that the dwelling is a homestead is on the person who claims that the dwelling is a homestead.

(2) If the application states the amount of the homestead exemption, the person claiming the homestead exemption has the burden of proof that the amount of the exemption is other than the amount stated in the application.

(b) The court shall determine whether the dwelling is exempt. If the court determines that the dwelling is exempt, the court shall determine the amount of the homestead exemption and the fair market value of the dwelling. The court shall make an order for sale of the dwelling subject to the homestead exemption, unless the court determines that the sale of the dwelling would not be likely to produce a bid sufficient to satisfy any part of the amount due on the judgment pursuant to Section 704.800. The order for sale of the dwelling subject to the homestead exemption shall specify the amount of the proceeds of the sale that is to be distributed to each person having a lien or encumbrance on the dwelling and shall include the name and address of each such person. Subject to the provisions of this article, the sale is governed by Article 6 (commencing with Section 701.510) of Chapter 3. If the court determines that the dwelling is not exempt, the court shall make an order for sale of the property in the manner provided in Article 6 (commencing with Section 701.510) of Chapter 3.

(c) The court clerk shall transmit a certified copy of the court order (1) to the levying officer and (2) if the court making the order is not the court in which the judgment was entered, to the clerk of the court in which the judgment was entered.

(d) The court may appoint a qualified appraiser to assist the court in determining the fair market value of the dwelling. If the court appoints an appraiser, the court shall fix the compensation of the appraiser in an amount determined by the court to be reasonable, not to exceed similar fees for similar services in the community where the dwelling is located.

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                                    page 16

**§704.790. (a) This section applies in any case where the court makes an order for sale of the dwelling upon a hearing at which none of the following appeared:**

(1) The judgment debtor.

(2) The judgment debtor's spouse.

(3) The attorney for the judgment debtor.

(4) The attorney for the judgment debtor's spouse.

(b) Not later than 10 days after the date of the order for sale, the judgment creditor shall serve a copy of the order and a notice of the order in the form prescribed by the Judicial Council:

(1) Personally or by mail on the judgment debtor and the judgment debtor's spouse.

(2) Personally on an occupant of the dwelling or, if there is no occupant present at the time service is attempted, post a copy of the order and notice in a conspicuous place at the dwelling.

(c) Proof of service and of any posting shall be filed with the court and with the levying officer. If the judgment creditor fails to comply with this subdivision and with subdivision (b) in any case where this section applies, the dwelling may not be sold under the order for sale.

(d) If, within 10 days after service of notice of the order, the judgment debtor or the judgment debtor's spouse files with the levying officer a declaration that the absence of the judgment debtor and the judgment debtor's spouse or the attorney for the judgment debtor or the judgment debtor's spouse from the hearing was due to mistake, inadvertence, surprise, or excusable neglect and that the judgment debtor or spouse of the judgment debtor wishes to assert the homestead exemption, the levying officer shall transmit the declaration forthwith to the court. Upon receipt of the declaration, the court shall set a time and place for hearing to determine whether the determinations of the court should be modified. The time set for hearing shall be not later than 20 days after receipt of the declaration. The court clerk shall cause notice of the hearing promptly to be given to the parties.

**§704.800. (a) If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, including but not limited to any attachment or judgment lien, the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year.**

**(b) If no bid is received at the sale of a homestead pursuant to a court order for sale that is 90 percent or more of the fair market value determined pursuant to Section 704.780, the homestead shall not be sold unless the court, upon motion of the judgment creditor, does one of the following:**

(1) Grants permission to accept the highest bid that exceeds the amount of the minimum bid required by subdivision (a).

(2) Makes a new order for sale of the homestead.

§704.810. Levy on a homestead that is subject to a lien or encumbrance is not by itself grounds for acceleration of the obligation secured by the lien or encumbrance, notwithstanding any provision of the obligation, lien, or encumbrance and if the homestead is sold pursuant to court order under this article the amount payable to satisfy a lien or encumbrance shall not include any penalty for prepayment.

§704.820. If the dwelling is owned by the judgment debtor as a joint tenant or tenant in common or if the interest of the judgment debtor in the dwelling is a leasehold or other interest less than a fee interest:

(a) At an execution sale of a dwelling, the interest of the judgment debtor in the dwelling and not the dwelling shall be sold. If there is more than one judgment debtor of the judgment creditor, the interests of the judgment debtors in the dwelling shall be sold together and each of the judgment debtors entitled to a homestead exemption is entitled to apply his or her exemption to his or her own interest.

(b) For the purposes of this section, all references in this article to the "dwelling" or "homestead" are deemed the references to the interest of the judgment debtor in the dwelling or homestead.

§704.830. The provisions of Sections 703.590 and 703.600 apply to proceedings under this article.

§704.840. (a) Except as provided in subdivision (b), the judgment creditor is entitled to recover reasonable costs incurred in a proceeding under this article.

(b) If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, the judgment creditor is not entitled to recover costs incurred in a proceeding under this article or costs of sale.

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                              **page 17**

§704.850. (a) The levying officer shall distribute the proceeds of sale of a homestead in the following order:
   (1) To the discharge of all liens and encumbrances, if any, on the property.
   **(2) To the judgment debtor in the amount of any applicable exemption of proceeds pursuant to Section 704.720.**
   (3) To the levying officer for the reimbursement of the levying officer's costs for which an advance has not been made.
   (4) To the judgment creditor to satisfy the following:
      (A) First, costs and interest accruing after issuance of the writ pursuant to which the sale is conducted.
      (B) Second, the amount due on the judgment with costs and interest, as entered on the writ.
   (5) To the judgment debtor in the amount remaining.
   (b) Sections 701.820 and 701.830 apply to distribution of proceeds under this section.

60.     On August 4, 2015, Defendant Whisenhunt responded to a Records request relating to

unpaid "refuse charges" since I receive "no services from a garbage company owned by the

County." I cited **Issac v. City of Los Angeles,** (1998) 66 Cal. App. 4th 586, which require "debt

be reduced to "judgment and abstract of judgment" in a Court. Also that the "special taxes" were

in violation of Art. XIII, D. There responded that the taxes were "grandfathered" in as pre-

dating 1978 which prohibited them. They also stated that they were permitted by Health &

Safety Code Sections 5470 et seq. Apparently, "over billing" and "collection of unlawful debt"

under 18 U.S.C. § 1962(d), is permitted by Health & Safety Code Sections 5470 et seq., a

QUESTION for the JURY. See *Sedima, S. P. R. L. v. Imrex, Co.*, 473 U.S. 479 (1985)

CALIFORNIA CONSTITUTION
ARTICLE 3  STATE OF CALIFORNIA

SEC. 3.5.  An administrative agency, including an administrative agency created by the
Constitution or an initiative statute, has no power:
      (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it
being unconstitutional unless an appellate court has made a determination that such statute is
unconstitutional;
      (b) To declare a statute unconstitutional;
      (c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that
federal law or federal regulations prohibit the enforcement of such statute unless an appellate
court has made a determination that the enforcement of such statute is prohibited by
federal law or federal regulations.

61.     Defendant Loretta Lynch, Attorney General, has stated that she would enforce federal

law, not local custom and policy. The local U.S. Attorney has remained silent even after 93

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                              **page 18**

citizens were killed by police, without warrants, some during "home invasion robberies under

color." The Anti-Corruption Act of November 18, 1988 has existed long enough for the DOJ to

investigate "white-collar crime" and government corruption in California. California created the

"police state" in *Wong Sun, supra,* and "home invasion robberies" in *Camara, supra.*also

*Florida v. Jardines,* 133 S. Ct. 1409 (2013) restated that the Fourth Amendment has been

"clearly established since 1791" to protect homes and curtilage from criminal trespass, yet in

California every government employee feels free to violate it, and it is encouraged by Attorney

General Kamala Harris as a tool for a revenue generating activity by code enforcement.

California use of "fabricated warrants" and courts records or judges, a RICO offense, see *Diaz v.*

*Gates,* 42O F.3d 897, 9th Cir. 2005)(*en banc*) *cert. denied.* 546 U.S. 1131 (2006) The Driver's

Privacy Protection Act of 1994, 18 U.S.C. § 2721, *see Maracich v. Spears,* 133 S. Ct. 2191

(2013) yet "license plate scanners" are used to steal identity and to do surveillance to target

citizens for highway robbery and extortion. Failure to train and supervise denying, "equal

protection" is a cognizable claim.

62.     Defendant VICTORIA MINOR, acting the capacity as Clerk of the Court, has refused the

follow the United States District Court's Manual, Rule 79. Routinely refused to adhere to

Amendments to Federal Rules of Civil Procedures changes Ordered by the Chief Justice. The

clerks perform "judicial acts" and appoint "magistrates to pro se civil actions," prohibited by

Rule 73 since 1997. All pro se litigants are treated like convicted criminals, and clerks refuse to

issue more than one summons, contrary to Rule 4, refuse to file Rule 55 defaults. Relieving

defendants requirement to file answer to summons, allowing defendants to file pre-answer

Motions for Summary Judgments (prohibited since 1966 Amendment to Rule 12), they treat

citizens with disrespect and rudely display their contempt for them, as though citizens should not

be allowed to bother them or waste their time. The Court provides no Jury trials and judges

routinely issue "directed verdicts, for failure to state a claim," a First, Fifth, Seventh and Fourteenth Amendment since 1948, creating a Due Process Claim. See ***Cotton, supra.*** See also ***Sanders v. Union Pacific Railroad Co.*** 193 F. 3d 1080 (9th Cir. 1999), ***en banc.***

63.    Defendant KAMALA HARRIS unlawfully delegates her State power and Chief law enforcement officers, uses *quid pro quo* agreements to allow municipalities to embezzle money from entities receiving federal funds to set up "criminal profiteering schemes" and "racketeering enterprises" to generate revenue and prey on citizens of California in violation of 18 U.S.C. § 666, see ***Sabri v. United States,*** 124 S. Ct. 1941 (2004); allows sheriffs' to make contracts with the media to allow the press to create television productions promoting police, constitutionally prohibited since ***Wilson v. Layne,*** 526 U.S. 603 (1999). Did allow the Governor to deposit the $331 million settlement from mortgage fraud to the General Fund to make sure that the citizens would receive no benefit from it. Defendant "encourages" government financed vigilantes preying on the homeless, elderly and disabled. There isn't a revenue generating fraud she doesn't love, "any scheme or artifice to defraud a citizen of their intangible right to honest services" by "fraud or swindles" in violation of 18 U.S.C. §§ 371, 1341 and 1346. She encourages the use of "General Warrants and Writs of Assistance". She refuses to enforce the Bane Act, or California Civil Code § 43.55 requiring warrants valid on their face for immunity for claims against "municipal employees", grants "absolute immunity" where it is prohibited by law, all in support of her "police state". Her encouragement of government corruption and white color crime is a direct causation of plaintiff's injury to person and property constituting a RICO claim.

CALIFORNIA CONSTITUTION
ARTICLE 5  EXECUTIVE

SEC. 13.  Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State.  It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced.  The Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all

matters pertaining to the duties of their respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable. Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney. When required by the public interest or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of the duties of that office.

## FIRST CLAIM FOR CONSPIRACY TO INJURE PLAINTIFF'S PERSON AND PROPERTY RIGHTS BY HONEST SERVICES FRAUD

64      The factual statements in paragraphs 1 through 63 are hereby incorporated herein pursuant to Rule 10.

65.     All Defendants did commit acts, or omissions, in furtherance of a conspiracy to participate in a scheme or artifice to defraud plaintiff of her intangible right to honest services and equal protection, under law, and did injure her in her person and property creating a cognizable claim under 18 U.S.C. §§ 2, 241, 371, 1341, 1346, 1962(d) and 1964(c).

## SECOND CLAIM FOR DEPRIVATION TO PLAINTIFF'S FIRST AMENDMENT RIGHT TO PETITION THE COURT FOR REDRESS OF GRIEVANCES

66      The factual statements in paragraphs 1 through 65 are hereby incorporated herein pursuant to Rule 10.

67.     All Defendants, did, acting in conspiracy, commit acts, or omissions, to obstruct justice, threaten and intimidate a victim/witness by procuring judicial acts, fraud and swindles, obstructing elective franchise, trespass to land, and interference with commerce by threats and violence to deprive Plaintiff of her First Amendment right to petition the Court for redress of grievances creating a cognizable claim under 18 U.S.C. §§ 2, 241, 371, 1341, 1346, 1951, 1962(d) and 1964(c).

## THIRD CLAIM FOR DEPRIVATION OF CIVIL RIGHTS BY ENTERING INTO A CONSPIRACY WITH PRIVATE PERSONS TO INJURE PLAINTIFF'S PERSON AND PROPERTY IN VIOLATION OF 42 U.S.C. §§ 1983 AND 1985(3)

68      The factual statements in paragraphs 1 through 67 are hereby incorporated herein

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                          **page 21**

pursuant to Rule 10.

69.     All Defendants did commit acts, or omissions, to encourage private persons to act under color of official right. "Such a nexus may exist when, for instance, private action results from the State's exercise of 'coercive power,' " or "when the State provides 'significant encouragement, either overt or covert,' " to the private actor." By "coercive power", trespass, threats, filing false against property, extortion and mail fraud, to injure Plaintiff in her person and property which creates a cognizable claim under 42 U.S.C. §§ 1983 and 1985(3).

### FOURTH CLAIM FOR FRAUD AND SWINDLES BY MAIL FRAUD TO DEPRIVE PLAINTIFF OF HER RIGHT TO HOMESTEAD

70.     The factual statements in paragraphs 1 through 69 are hereby incorporated herein pursuant to Rule 10.

71.     All Defendants did enter into a conspiracy to commit "fraud and swindles" by "mail fraud" and violation of the Fair Debt Collections Act, to deprive Plaintiff of her right to Homestead, protected by the California Constitution, Article, XX, Section 1.5, denying due process and equal protection under the Fifth and Fourteenth Amendment creating a cognizable claim under 18 U.S.C. §§ 1341,1346, 1951, 1962(d) and 1964(c).

### FIFTH CLAIM FOR DEPRIVATION OF PLAINTIFF OF DUE PROCESS AND EQUAL PROTECION UNDER LAW

72.     The factual statements in paragraphs 1 through 71 are hereby incorporated herein pursuant to Rule 10.

73.     All Defendant did enter into a conspiracy to deprive Plaintiff of due process and equal protection under law which creates a cognizable claim under the Fifth, Seventh and Fourteenth Amendment to the Constitution of the United States.

## SIXTH CLAIM FOR THE CIVIL REMEDIES UNDER RACKETEERING AND CORRUPTION ORGANIZATIONS ACT TO INJURE PLAINTIFF IN HER PERSON AND PROPERTY

74.    The factual statements in paragraphs 1 through 73 are hereby incorporated herein pursuant to Rule 10.

75.    All Defendants did enter into a conspiracy to violate the Racketeering and Corrupt Organizations Act to injure Plaintiff in her person and property by predicate acts of deprivation of honest services and fraud and swindles creating a cognizable claim for threefold damages, reasonable attorney fees and costs as provided under 18 U.S.C. § 1964(c).

## SEVENTH CLAIMS FOR STATE LAW CLAIMS UNDER THE BANE ACT, CALIFORNIA CIVIL CODE § 52.1

76.    The factual statements in paragraphs 1 through 75 are hereby incorporated herein pursuant to Rule 10.

77.    All defendant did commit overt acts in conspiracy to violate the Bane Act, California Civil Code § 52.1 to deprive Plaintiff of her rights under the California Constitution and the Homestead Act of 1976, which creates a State law claim cognizable under federal law.

## PLAINTIFFS CLAIMS FOR THREEFOLD DAMAGES

78.    The factual statements in paragraphs 1 though 77 are hereby incorporated pursuant to Rule 10.

79.    As a proximate and natural result of ALL DEFENDANTS' conspiracy to injure Sharon A. Martin.  All Defendants did commit acts, and omissions, including those of their agents, officers, employees, who were acting in conspiracy and joint participation under color of official right, or under color of  state law as governmental actors and private actors, plaintiff Sharon A. Martin has been subjected to injuries and have suffered, and more likely than not, will suffer the

following damages, and DEMAND relief from EACH AND EVERY DEFENDANT as follows:

a.   Damages in the amount of $1,000,000.00 against EACH defendant in default

b.   Threefold and consequential damages;

c.   damages, reasonable attorney's fees, and costs;

d,   Exemplary and/or punitive damages;

e.   Prejudgment and post judgment interest, and

f.   Any other monetary relief awarded by the JURY as they believe

reasonable and just compensation for Defendants' conduct which was egregious and the direct

or indirect, and proximate causation of plaintiff's injuries under the totality of the circumstances

and by the preponderance of the evidence, Federal Rules of Civil Procedure, Rule 301.

Presumptions in civil actions and proceeding.

80.   WHEREFORE, plaintiff Sharon A. Martin respectfully prays for Trial by Jury, F..R.C.P.

Rule 38, in this civil action, and Judgment be rendered against ALL DEFENDANTS for their

conduct and behavior which deprived Plaintiff of rights secured by Acts of Congress and the

Constitution of the United States and caused injuries to their persons, property and business in

violation of CIVIL RIGHTS.

## CERTIFICATION, F.R.E., RULE 801

81.   Sharon A. Martin, plaintiff, in the above entitled action, hereby swears under penalty of

perjury under the laws of the United States, that the foregoing is of our personal knowledge,

being true and correct, pursuant to F.R.C.P. Rule 301, and admissible into evidence against all

defendants under the 1997 Amendment to Federal Rules of Evidence, Rule 801 et seq.

Respectfully submitted,
DATED: August 10th, 2015

Sharon A. Martin
429 Silver Park Avenue
Rio Linda, CA. 95673-2242

**ORIGINAL COMPLAINT DEMAND FOR JURY TRIAL**                    **page 24**